UNITED STATES BANKRUPTCY COURT                          **FOR PUBLICATION**

SOUTHERN DISTRICT OF NEW YORK

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -x

| | | |
|---|---|---|
| In re: | : | Chapter 11 |
| BAYOU GROUP, LLC, *et al.*, | : | Case No. 06 B 22306 (ASH) |
| Debtors. | : | Jointly Administered |

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -x

| | | |
|---|---|---|
| BAYOU SUPERFUND, LLC, | : | |
| Plaintiff, | : | |
| - against - | : | Adv. Proc. No. 06-08293A |
| WAM Long/Short Fund II, L.P.<br>f/k/a WAM Long/Short Fund, L.P., | : | |
| | : | |
| Defendant. | : | |
| | : | |

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -x

| | | |
|---|---|---|
| [94 additional adversary proceeding<br>captions annexed as Schedule A] | : | |
| | : | |

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -x

**A P P E A R A N C E S :**

**[Appearances annexed as Schedule B]**


**ADLAI S. HARDIN, JR.**
**UNITED STATES BANKRUPTCY JUDGE**

<u>**DECISION DENYING MOTIONS TO DISMISS**</u>

Before the Court are defendants' motions to dismiss the amended complaints in ninety-

five adversary proceedings pursuant to Bankruptcy Rules 7009 and 7012 and Federal Rules of Civil

Procedure 9(b) and 12(b)(6). The adversary proceedings were commenced by debtors-plaintiffs to

recover alleged fraudulent conveyances under Sections 544 and 548 of the Bankruptcy Code and

Sections 273-276 of the New York Debtor and Creditor Law ("DCL").[1]

---

[1]    Because the relevant provisions of the DCL are substantially similar to Bankruptcy Code
Section 548, the discussion here will focus on Section 548.

The plaintiffs in these 95 adversary proceedings (Bayou Superfund, LLC, Bayou No Leverage Fund, LLC and Bayou Accredited Fund, LLC) are three hedge funds organized in 2003 (collectively, the "Bayou Hedge Funds" or, together with other Bayou-related entities, the "Bayou Entities").   The defendants are persons and entities who invested in the Bayou Hedge Funds.   The gravamen of the amended complaints is that the Bayou Entities including the Bayou Hedge Funds were operated by their pre-petition principals — Samuel Israel III and Daniel E. Marino ("Israel" and "Marino") — as a "massive Ponzi scheme."   As summarized at page 2 of plaintiffs' Memorandum of Law in response to the motions to dismiss ("Plaintiffs' Memorandum"):

> Israel and Marino siphoned many millions of dollars from the Bayou Hedge Funds for their personal benefit, disseminated false financial reports indicating that the Bayou Hedge Funds had enjoyed substantial investment gains when in fact they had experienced substantial losses, created a phony accounting firm to certify those false financial reports, and caused the Bayou Hedge Funds to make redemption payments to certain investors in inflated amounts derived from those false reports.  When the fraudulent scheme collapsed, hundreds of investor creditors lost all of their principal investments totaling approximately $250 million.  . . .

> Essential to the fraudulent investment scheme was the transfer of over $135 million in inflated redemption payments of non-existent principal and fictitious profits to the Defendants, each of whom redeemed during the fourteen months preceding the Bayou Hedge Funds' demise in August 2005.  To effect the fraud, the Bayou Entities purposefully paid Defendants substantially more than their investments were actually worth in order to validate the falsified performance reports and financial statements, with the specific intent to conceal the fraud from existing investors and to induce prospective investors to entrust new investments to the Bayou Hedge Funds.  As such, these redemption payments were the *sine qua non* of the fraud, and thus were made with actual intent to defraud present and future creditors.

The alleged fraudulent conveyances sought to be recovered are payments to the defendants of "non-existent principal and fictitious profits" in redemption of defendants' purported but non-existent interests in the Bayou Hedge Funds as reflected in the Funds' false financial reports (*id.* at 3).

## <u>Jurisdiction</u>

This Court has jurisdiction over these core proceedings under 28 U.S.C. §§ 1334(b) and 157(a) and (b)(2) and the standing order of reference to bankruptcy judges dated July 10, 1984 signed by Acting Chief Judge Robert J. Ward.

### Background

The material facts alleged in the amended complaints may be briefly summarized.

It is alleged that the original Bayou Fund was organized by Israel and Marino in 1996. Soon after the Bayou Fund opened and started trading, it sustained heavy losses amounting to millions of dollars during 1997 and 1998. To conceal those losses, the Bayou Fund began falsifying its financial disclosures and fraudulently misrepresenting its investment performances. Because the Bayou Fund's losses could not withstand the scrutiny of an independent audit of year-end 1998 financial results, the Bayou Fund's independent auditor was terminated and, in its place, Marino (an accountant) created a fictitious accounting firm (Richmond-Fairfield Associates, CPA, PLLC) to pose as the independent auditor.

Beginning in 1999 and continuing through 2005 Israel and Marino caused the Bayou Entities, under cover of purported "audits" by Richmond-Fairfield, to continue to generate false performance summaries and false financial statements designed to mislead investors. Because the Bayou Entities were self-administered and lacked a truly independent auditor, they were able to and did maintain books and records that fraudulently misrepresented their true financial performance. As alleged in the amended complaints (quoting from the amended complaint in adversary proceeding no. 06-08354):

> 14. As Israel and Marino both admitted in their respective plea allocutions, they and their co-conspirators:
>
>> caused to be mailed quarterly reports to investors that contained fictitious rates of return on trading in the funds and annual financial statements that contained fictitious rates of return on trading and inflated net asset[] values. [They] also had faxed and mailed weekly newsletters that also misrepresented the performance of the funds at various times during the time period set forth in the information. All these communications to investors [ ] made it appear that Bayou was earning profits on trading when in fact it was not.
>
> Israel further admitted that this false financial information concerning Bayou's performance was disseminated to "current and prospective clients of Bayou" in order to "induce [ ] people to invest in Bayou or continue to keep their money in Bayou."

From 1999 to 2003 the Bayou Fund continued to lose substantial amounts of money and never earned a profit, all the while drawing in hundreds of millions of dollars of new investments. As a

result of a reorganization in February 2003, the original Bayou Fund was liquidated and four separate on-shore hedge funds were created, including the three Bayou Hedge Funds which are the debtor-plaintiffs in these adversary proceedings.   Investors could transfer their investment in the original Bayou Fund to one of the four new Bayou Hedge Funds.   Each of the new Bayou Hedge Funds subsequently sustained millions of dollars in losses, which were concealed through dissemination of false investment performance reports and false financial statements.

In addition to trading losses, the Bayou Hedge Funds were depleted for the personal financial benefit of the principals of the Bayou Entities.  Tens of millions of dollars in high volume trading commissions were paid to a broker-dealer wholly owned by the principals, and millions of dollars of incentive bonus payments were made to the principals based on non-existent profits.  The Bayou Hedge Funds made a series of bank transfers exceeding $100 million out of the Bayou Entities' accounts to various bank accounts in Europe, which were eventually deposited in a bank account in the United States.  This bank account was seized by the Arizona Attorney General in May 2005, and the funds were eventually transferred to the United States Marshals Service, apparently for distribution *pro rata* to victims of the Bayou fraud.

During the summer of 2005 the Bayou Entities' Ponzi scheme finally collapsed.  Despite assurance of full payment to the investors, the Bayou Hedge Funds did not repay any money to their investor-creditors.  It is alleged on information and belief that the Bayou creditors lost approximately $250 million principal invested.

**Fraudulent Redemption Payments to Investors**

The fraudulent conveyance claims asserted in these adversary proceedings seek to recover payments made to the defendant Bayou investors in purported redemption of part or all of their investment interests in the several Bayou Hedge Funds as reflected in the published financials for each of the Funds.  Since the financials fraudulently overstated the assets and failed to disclose the losses of the Bayou Hedge Funds and, therefore, overstated the investment accounts of all of the redeeming investors, the redemption payments in respect of greatly reduced or non-existent principal and fictitious profits

- 4 -

exceeded the redeeming investors' contractual entitlements.  The Bayou fraud is characterized in the

amended complaint as in the nature of a Ponzi scheme because the fraudulent payments to the redeeming

investor-defendants were necessarily funded by monies received from new investors.

      The fraudulent redemption payment scheme alleged in the amended complaints is set

forth in the following paragraphs common to all the amended complaints (quoting from the amended

complaint in adversary proceeding no. 06-08354):

> 24.     Prior to August 2005, and during the period of the Bayou Entities'
> fraudulent financial scheme, various Bayou investors, including [the named
> defendant(s)], sought to, and did, redeem all or part of their investment in the Bayou
> Hedge Funds (the "Redeeming Investors").  At the time, the Bayou Hedge Funds'
> falsified financial statements reported that the Redeeming Investors' accounts included
> substantial gains on their investments.  In reality, the Bayou Hedge Funds had lost a
> substantial portion of investors' principal and had not made any profits.  A true statement
> of the Redeeming Investors' accounts would have shown an amount significantly less
> than the Redeeming Investors' principal contributions and of course no profits.

> 25.     In an attempt to conceal the ongoing fraud and thereby hinder, delay, or
> defraud other current and prospective investors, the Bayou Entities paid the Redeeming
> Investors the inflated amount reflected in the falsified financial statements, including
> non-existent principal and fictitious profits, not the Redeeming Investors' true depleted
> account balances.

> 26.     Due to heavy trading losses and the siphoning of additional funds, the
> Bayou Entities did not have the funds to pay these redemptions of non-existent principal
> and fictitious profits to the Redeeming Investors.  Accordingly, the Bayou Entities
> aggressively pursued new investors, and used the incoming capital from those new
> investors to continue operations and pay redemption proceeds to investors who sought to
> exit the Bayou Hedge Funds.  The Bayou Entities were able to stay afloat only by using
> the principal invested by new clients to pay the Redeeming Investors.  In this way, the
> Bayou Entities operated as a "Ponzi" scheme.

## Section 548 Fraudulent Conveyance Claims and Defense

### Actual fraud

      Fraudulent conveyance claims based on actual fraud arise under Bankruptcy Code

Section 548(a)(1)(A), which provides as follows:

> (a)(1) The trustee may avoid any transfer (including any transfer to or for the benefit of
> an insider under an employment contract) of an interest of the debtor in property, or any
> obligation (including any obligation to or for the benefit of an insider under an employ-
> ment contract) incurred by the debtor, that was made or incurred on or within 2 years
> before the date of the filing of the petition, if the debtor voluntarily or involuntarily —

(A) made such transfer or incurred such obligation with actual intent to
hinder, delay, or defraud any entity to which the debtor was or became, on or
after the date that such transfer was made or such obligation was incurred,
indebted; or

Several observations may be made concerning this statute which are germane to the
motions to dismiss.  This provision, like analogous provisions under state law, avoids the *entire* amount
of "any transfer" which was made by the transferor with actual intent to hinder, delay or defraud
creditors.  Moreover, the entirety of the transfer is avoidable whether or not the debtor received value in
exchange, and the plaintiff need not allege and prove that the transfer was for less than fair value if actual
intent is alleged and proved under Section 548(a)(1)(A).  *See Sharp Int'l Corp. v. State Street Bank and
Trust Co. (In re Sharp Int'l Corp.)*, 403 F.3d 43, 56 (2d Cir. 2005) (citing *United States v. McCombs*, 30
F.3d 310, 328 (2d Cir. 1994)) ("[W]here actual intent to defraud creditors is proven, the conveyance will
be set aside regardless of the adequacy of consideration given.") (applying the actual fraudulent
conveyance provision of the DCL); *see also Scholes v. Lehmann*, 56 F.3d 750, 757 (7th Cir. 1995), *reh'g
en banc denied*, 1995 U.S. App. LEXIS 17088 (7th Cir. 1995), *cert. denied sub nom. African Enterprise,
Inc. v. Scholes*, 516 U.S. 1028 (1995)  (under analogous Illinois fraudulent conveyance statute, "if
fraudulent intent is proved, then . . . the defendant, unless he had no knowledge of the transferor's
fraudulent intent must return the entire payment that he received rather than just the amount by which it
exceeded the consideration that he gave in exchange for the payment"); *Hayes v. Palm Seedlings
Partners-A (In re Agric. Research and Tech. Group, Inc.)*, 916 F.2d 528, 538 (9th Cir. 1990) (under
Section 548(a)(1)(A), "the entire transfer may be avoided, even if reasonably equivalent value was given,
so long as the transferor actually intended to hinder, delay or defraud its creditors and the transferee
accepted the transfer without good faith"); *Kendall v. Turner (In re Turner)*, 335 B.R. 140, 145 (Bankr.
N.D. Cal. 2005), *modified on reconsideration by*, 345 B.R. 674 (Bankr. N.D.Cal. 2006) ("the entire
transfer is avoided" under Section 548(a)(1)(A) of the Bankruptcy Code); 5 *Collier on Bankruptcy*
¶ 548.01[1] at 548-11 (15th ed. 2006) ("[I]f the transaction is fraudulent within the rules set forth in
section 548, the trustee may avoid it in its entirety without any limitation on the extent of the recovery

other than those imposed by § 548(c) to protect transferees and obligees in good faith." (footnote omitted)).

Consistent with the statutory language ("any transfer") and the foregoing authorities, the courts have held in the context of fraudulent investment schemes that the entirety of redemption payments made to investors may be avoided including repayments of principal actually invested by the defendants. *See Jobin v. McKay (In re M & L Business Machine Co., Inc.)*, 84 F.3d 1330, 1334 (10th Cir. 1996) (upholding district court's affirmance of bankruptcy court's ruling that "the trustee was entitled to avoid all of the challenged transfers under § 548(a)(1)"); *Terry v. June*, 432 F. Supp. 2d 635, 642 (W.D.Va. 2006) ("a defendant who wishes to retain the principal he received back must establish the good faith defense when the plaintiff has established that the transferor conveyed funds to him with actual intent to defraud creditors"); *see also* Mark A. McDermott, *Ponzi Schemes and the Law of Fraudulent and Preferential Transfers*, 72 Am. Bankr. L.J. 157, 173 (1998) (A claim of actual fraud "presents a substantial advantage to the trustee in a fraudulent conveyance action . . . [since] under an actual fraud theory, the trustee may be able to recover all amounts transferred to an investor, including both fictitious profits and returns of the investor's principal investments, regardless of the investor's subjective good faith.").

One of the defendants has argued mistakenly that redemption of principal investments cannot be avoided under Section 548(a)(1)(A) and that the cases "are legion" holding that "repayment of less than all of the principal investment to a defrauded investor cannot be a fraudulent conveyance." Two of the cases this defendant relies upon, *Scholes v. Lehmann* and *Terry v. June* (both cited above), hold precisely the opposite, and the other cases relied upon (including this Court's decision in *Balaber-Strauss v. Sixty-Five Brokers (In re Churchill Mortgage Investment Corp.)*, 256 B.R. 664 (Bankr. S.D.N.Y. 2000), *aff'd sub nom. Balaber-Strauss v. Lawrence*, 264 B.R. 303 (S.D.N.Y. 2001)) involved constructive fraud claims under Section 548(a)(1)(B), rather than actual fraud claims under Section 548(a)(1)(A).

Note that the three kinds of misconduct mentioned in the statute are in the disjunctive — the mischief at which the statute is aimed is to "hinder, delay, or defraud."  Moreover, the statute covers such mischief whether aimed at present or future creditors of the debtor.

As is clear from the statutory language ("if the *debtor* . . . made such transfer . . . with actual intent . . "), the claim of actual fraud looks only to the fraudulent intent of the transferor/debtor. Neither the language of Code Section 548(a)(1)(A) nor the case law requires the plaintiff to allege or prove that the transferee had any intent to hinder, delay or defraud or any knowledge of the transferor's fraudulent intent.   Although the knowledge or innocence of the transferee is irrelevant to a plaintiff's claim based on the transferor's intent to "hinder, delay, or defraud," it is central to the defendant-transferee's affirmative defense under Section 548(c).

## The defense of good faith and value

"Good faith" and "value" may be a defense to a fraudulent conveyance claim under subsection (c) of Section 548, which provides:

> (c)    Except to the extent that a transfer or obligation voidable under this section is voidable under section 544, 545, or 547 of this title, a transferee or obligee of such transfer or obligation that takes for value and in good faith has a lien on or may retain any interest transferred or may enforce any obligation incurred, as the case may be, to the extent that such transferee or obligee gave value to the debtor in exchange for such transfer or obligation.

The good faith/value defense provided in Section 548(c) is an affirmative defense, and the burden is on the defendant-transferee to plead and establish facts to prove the defense.  *Silverman v. Actrade Capital, Inc. (In re Actrade Fin. Techs. Ltd.)*, 337 B.R. 791, 805 (S.D.N.Y. 2005) (quoting *Breeden v. L.I. Bridge Fund, LLC (In re Bennett Funding Group, Inc.)*, 232 B.R. 565, 573 (N.D.N.Y. 1999)) ("Under the Bankruptcy Code, § 548(c) 'has been construed as an affirmative defense, all elements of which must be proven by the defendant-transferee.'"); *Gredd v. Bear, Stearns Sec. Corp. (In re Manhattan Inv. Fund Ltd.)*, 310 B.R. 500, 508 (N.D.N.Y. 2002), *leave to appeal denied*, 288 B.R. 52 (2002) ("[S]ection 548(c) designates the transferee's good faith as an *affirmative defense* which may be raised and proved by the transferee at trial.") (emphasis in original); 5 *Collier on Bankruptcy* ¶ 548.10 at 548-81 (15th ed. 2006)

("The party that seeks to be established as a good faith transferee or obligee within this saving clause has the burden of proof (risk of non-persuasion) thereon."(footnote omitted)).  It bears repeating on these motions that the plaintiff in a Section 548(a)(1)(A) claim does not have the burden to allege and prove that the defendant-transferee did not give value for or act in good faith in receiving the transfer.

**<u>Constructive fraud</u>**

Claims based on constructive fraud arise under subpart (B) of Section 548(a)(1), which provides in pertinent part [omitting new subsection (IV)]:

. . . if the debtor voluntarily or involuntarily:

* * *

(B)    (i)    received less than a reasonably equivalent value in exchange for such transfer or obligation; and

(ii)    (I) was insolvent on the date that such transfer was made or such obligation was incurred, or became insolvent as a result of such transfer or obligation;

(II) was engaged in business or a transaction, or was about to engage in business or a transaction, for which any property remaining with the debtor was an unreasonably small capital;

(III) intended to incur, or believed that the debtor would incur, debts that would be beyond the debtor's ability to pay as such debts matured; or

The plaintiff in a claim for constructive fraud under Section 548(a)(1)(B) has the burden of pleading and proving that the debtor received less than reasonably equivalent value for the transfer, and also that the debtor was insolvent at the time of or was rendered insolvent by the transfer.

## <u>The Motions to Dismiss</u>

The motions to dismiss are based on Federal Rules of Civil Procedure 9(b) and 12(b)(6), made applicable in bankruptcy proceedings under Bankruptcy Rules 7009 and 7012.  Rule 12(b)(6) provides for a motion "(6) to dismiss for failure of the pleading to state a claim upon which relief can be granted."  Rule 9(b) states:

### Rule 9.   Pleading Special Matters

\* \* \*

**(b) Fraud, Mistake, Condition of the Mind.**  In all averments of fraud or mistake, the circumstances constituting fraud or mistake shall be stated with particularity.  Malice, intent, knowledge, and other condition of mind of a person may be averred generally.

Under Rule 12(b)(6), a defendant may move to dismiss a complaint on the ground that it fails to state a claim upon which relief may be granted.  *Balaber-Strauss v. Sixty-Five Brokers (In re Churchill Mortgage Inv. Corp.)*, 256 B.R. at 672.  In reviewing a motion to dismiss under Rule 12(b)(6), "a court merely assesses the legal feasibility of the complaint, and does not weigh the evidence that may be offered at trial."  *Global Entertainment, Inc. v. New York Telephone Co., et al.*, 2000 WL 1672327, at \*2 (S.D.N.Y. Nov. 6, 2000) (citing *Festa v. Local 3, Int'l Brotherhood of Elec. Workers*, 905 F.2d 35, 37 (2d Cir. 1990), *cert. denied*, 510 U.S. 864 (1993)).  The court "must construe any well-pleaded factual allegations in the complaint in favor of the plaintiff. . . ."  *Sykes v. James*, 13 F.3d 515, 519 (2d Cir. 1993), *cert. denied*, 512 U.S. 1240 (1994).  *See also, Cohen v. Koenig*, 25 F.3d 1168, 1171-72 (2d Cir. 1994) ("When ruling on a motion pursuant to Rule 12(b)(6) to dismiss for failure to state a claim upon which relief may be granted, the court must accept the material facts alleged in the complaint as true." (citations omitted)); *see also, Zdenek Marek v. Old Navy (Apparel) Inc.*, 348 F. Supp. 2d 275, 279 (S.D.N.Y. 2004).  This is not to say, however, that every statement in a complaint must be accepted as true.  *In re Churchill Mortgage Inv. Corp.*, 256 B.R. at 673.  The Court may not dismiss a complaint for failure to state a claim "unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief."  *Conley v. Gibson*, 355 U.S. 41, 45-46 (1957) (footnote omitted).

In resolving a Rule 12(b)(6) motion the Court may consider "documents attached to the complaint as exhibits, or incorporated in it by reference, to matters of which judicial notice may be taken or to documents on which the plaintiff relied in bringing suit."  *Mosello v. Ali, Inc. (In re Mosello)*, 190 B.R. 165, 168 (Bankr. S.D.N.Y. 1995), *aff'd*, 193 B.R. 147 (1996), *aff'd*, 104 F.3d 352 (2d Cir. 1996).

*See also, In re Leslie Fay Companies, Inc.*, 166 B.R. 802 (S.D.N.Y. 1994) (citing *Brass v. American Film Technologies, Inc.*, 987 F.2d 142, 150 (2d Cir. 1993)).

**Defendants' Contentions**

**Rule 9(b) and sufficiency of allegations of "actual intent"**

Relying on the requirement of Rule 9(b) that allegations of fraud be pleaded with particularity, defendants argue that the amended complaints do not sufficiently allege that the Bayou redemption payments were made with the "actual intent" to hinder, delay and defraud required under Section 548(a)(1)(A). They assert that the Bayou facts do not constitute a classic Ponzi scheme so that the "Ponzi scheme presumption" does not apply, and that plaintiffs have not alleged "badges of fraud" sufficient to give rise to an inference of actual intent.

Defendants' restricted definition of "a *true* Ponzi scheme" (promise of high returns, no legitimate underlying business activity and the certainty that later investors cannot possibly be repaid) does not accord with the case law. Numerous decisions have established two broad principles. First, the label "Ponzi scheme" has been applied to any sort of inherently fraudulent arrangement under which the debtor-transferor must utilize after-acquired investment funds to pay off previous investors in order to forestall disclosure of the fraud. *See Rosen v. Neilson (In re Slatkin)*, 310 B.R. 740, 743 n.3 (C.D. Cal. 2004) (citing *Danning v. Bozek (In re Bullion Reserve of N. Am.)*, 836 F.2d 1214, 1219 n.8 (9th Cir. 1988) ("A 'Ponzi' scheme is any sort of fraudulent arrangement that uses later acquired funds or products to pay off previous investors."); *Hayes v. Palm Seedlings Partners (In re Agric. Research and Tech. Group, Inc.)*, 916 F.2d 528, 536 (9th Cir. 1990) ("Distributing funds to earlier investors from the receipt of monies from later investors is the hallmark of Ponzi schemes."); *Cuthill v. Kime (In re Evergreen Sec., Ltd.)*, 319 B.R. 245, 249 (Bankr. M.D. Fla. 2003) (finding a Ponzi scheme where the debtor "used most funds received from new investors to pay prior investor claims"). Second, where funds acquired from the later investors are used to make payments to earlier investors in redemption of impaired or non-existent account balances and fictitious profits, "actual intent" to hinder, delay and defraud is presumed. *Quilling v. Stark*, 2006 WL 1683442, at *6 (N.D. Tex. June 19, 2006) ("The existence of a *Ponzi* scheme

as alleged in the complaint makes the transfer of investor funds fraudulent as a matter of law."(citation

omitted)) (emphasis in original); *Terry v. June*, 432 F. Supp. 2d 635, 639 (W.D. Va. 2006) ("[C]ourts

have widely found that Ponzi scheme operators necessarily act with actual intent to defraud creditors due

to the very nature of their schemes."); *Jobin v. Lalan (In re M & L Business Machine Co., Inc.)*, 160 B.R.

851, 857 (Bankr. D. Colo. 1993), *aff'd*, 167 B.R. 219 (1994) ("[I]n a Ponzi scheme the only inference that

a court can make is that the Debtor had the requisite intent to hinder, delay or defraud under

§548(a)(1)."). *See also*, *Bauman v. Bliese, et al. (In re McCarn's Allstate Fin., Inc.)*, 326 B.R. 843, 850

(Bankr. M.D. Fla. 2005) ("Bankruptcy courts nationwide have recognized that establishing the existence

of a Ponzi scheme is sufficient to prove a Debtor's actual intent to defraud."); *Rieser v. Hayslip, et al. (In*

*re Canyon Sys. Corp.)*, 343 B.R. 615, 636-37 (Bankr. S.D. Ohio 2006) (holding that "[a]ctual intent to

hinder, delay or defraud may be established as a matter of law in cases in which the debtor runs a Ponzi

scheme or a similar illegitimate enterprise").

   A "Ponzi scheme" within the broader scope defined in these authorities is precisely what

is alleged in the amended complaints in these adversary proceedings.   The presumption of "actual intent"

to hinder, delay and defraud is both intuitive and inescapable on the facts which are alleged in the

amended complaints — that redemption payments of wholly- or partially-non-existent investment account

balances and wholly-fictitious profits, as reflected on fraudulent financial statements, were made to earlier

investors requesting redemption using funds invested by subsequent investors.   Indeed, it is impossible to

imagine any motive for such conduct other than actual intent to hinder, delay or defraud.

   Putting aside the Ponzi scheme presumption, the "badges of fraud" alleged in the

amended complaints are more than ample to comply with the requirement of Rule 9(b) that fraud be

pleaded with particularity.   The amended complaints alleged that the Bayou Hedge Funds never earned a

profit and suffered heavy trading losses; that the Bayou Entities' former principals siphoned money from

the Bayou Hedge Funds for their own personal use; that the Bayou Entities intentionally disseminated

false financial statements and performance reports misrepresenting that the Funds had earned substantial

investment gains; that from 1998 on the Bayou Entities made use of a fictitious "independent" auditor,

Richmond-Fairfield, to certify the false financial statements; that the Bayou Entities' principals, Israel and Marino, pleaded guilty to felonies related to the fraudulent conduct alleged in the amended complaints; and that Israel's plea allocution, which is quoted in the amended complaints, acknowledges that the fraud was designed to "induce[ ] people to invest in Bayou or continue to keep their money in Bayou."    It is difficult to imagine a more comprehensive compendium of alleged "badges of fraud," all of which compel the inference that the redemption payments sought to be recovered here were made by the Bayou Hedge Funds with the actual intent to hinder, delay and defraud both present and future creditors, *i.e.*, present investors who were induced to continue their investments and prospective investors which the principals of the Bayou Hedge Funds hoped to and did induce to invest in the Funds in the future.

**Value; fictitious profits**

Defendants assert that by returning investment principal to the defendants the Bayou Hedge Funds satisfied their antecedent debt to the defendants and thereby received "value."  A few simple propositions will suffice to demonstrate why this proposition, although true, does not support dismissal of the amended complaints for failure to state a claim.

The defendants cannot and do not claim that they, as investors, had any contractual right to repayment or redemption of amounts invested to the extent that their investments had been depleted by losses or misappropriation by Bayou insiders.  It is also clear under the case law, as defendants assert, that persons who were induced by fraud to invest in the Bayou Hedge Funds or predecessor funds may have a state law claim for rescission, and that this tort claim is an antecedent debt which constitutes value for purposes of Section 548(a)(1)(B) and Section 548(c).

Plaintiffs acknowledge that defendants' tort claims for rescission of the entire amount of their principal invested constitute value for purposes of Section 548(a)(1)(B).   Consequently, plaintiffs' constructive fraud claims under Section 548(a)(1)(B) are limited to any fictitious profits which were paid to any of the defendants.

But as noted above, plaintiffs' claims under Section 548(a)(1)(A) based on actual intent seek to recover the entirety of "any transfer" by the Bayou Hedge Funds to the defendants, not simply

those transfers as to which the Funds did not receive any value.  Plaintiffs are entitled to recover the

entirety of any transfer made with actual intent to defraud whether or not the plaintiffs received value in

exchange for the transfer.  Accordingly, the fact that the Bayou Hedge Funds received value on account

of the redemption payments by reason of the extinguishment of the defendants' rescission tort claims is

irrelevant to plaintiffs' claims under Section 548(a)(1)(A) and does not constitute a ground to dismiss

those claims.

Several defendants have advanced alternate theories that the fictitious profits portion of

redemption payments which they received should be deemed to constitute payments on antecedent debts

for interest on their Bayou investments, either contractual interest relying on *Daly v. Deptula (In re*

*Carrozzella & Richardson)*, 286 B.R. 480 (D. Conn. 2002) and *Lustig v. Weisz and Associates, Inc. (In re*

*Unified Commercial Capital, Inc.)*, No. 01-MBK-6004L, 2002 WL 32500567 (W.D.N.Y. 2002), or as

statutory "prejudgment interest" under New York Civil Practice Law and Rules Section 5001.  Neither

theory is sustainable.

The *Carrozzella* and *Unified Commercial Capital* cases both involved contractual rights

to interest.   Bayou investors had no contractual right to interest.   The concept of prejudgment interest is

not applicable because there is no generalized right, or claim to, or cause of action for such interest inde-

pendent of a judgment.  CPLR § 5001 provides for prejudgment interest "upon a sum awarded."   When

the defendants demanded redemption of and were paid their Bayou account balances including the ficti-

tious profits recorded in the fictitious Bayou financial statements, there was no "present or antecedent

debt" for prejudgment interest.   Defendants' receipt of their redemption payments extinguished any

putative rights to statutory prejudgment interest which might have been awarded if they had sought and

obtained a judgment against the Bayou Hedge Funds, which they did not.   "An acceptance of payment on

a principal indebtedness extinguishes the claim for prejudgment interest. . . ."  *Guy James Constr. Co. v.*

*Trinity Indus., Inc.*, 644 F.2d 525, 532 (5th Cir. 1981), *opinion modified by*, 650 F.2d 93 (1981); *see also*

*Bedard v. Martin*, 100 P.3d 584, 589 (Colo. Ct. App. 2004) (finding that where plaintiff accepted

payment "representing the full purchase price of the property, he lost his right to recover prejudgment

interest."); *Hammond v. Carthage Sulphite Pulp & Paper Co.*, 34 F.2d 157, 158 (N.D.N.Y. 1928) ("Interest, except in cases where there is a contract to pay it, does not constitute a debt capable of a distinct claim. . . .   [T]he acceptance of the principal, even under protest, without a separate agreement for the payment of interest, extinguishes the claim and bars a claim for its payment."(citations omitted)); 47 *C.J.S. Interest & Usury* § 136 (West 2006) ("[W]here interest is recoverable other than under a contract, and payment of the principal as such is made and accepted, no interest can be recovered, the payment of the debt extinguishing the right to recover interest thereon.   Interest, in such a case, is merely incidental to the debt or principal and cannot exist without it.   Thus interest cannot be recovered in a separate action."(footnotes omitted)).   The Second Circuit has held that "contingent, inchoate interests in property" such as the theoretical right to receive prejudgment interest on a putative judgment for fraudulent inducement claims that were never asserted do not constitute "fair consideration" under the analogous provision of DCL § 272.   *HBE Leasing Corp. v. Frank*, 61 F.3d 1054, 1058-59 (2d Cir. 1995) (transferee did not provide "fair consideration" by giving up "contingent rights that otherwise *might* accrue to [transferee's] benefit *in the future*") (emphasis in original).

Plaintiffs are correct in asserting in their brief  "that virtually every court to address the question has held unflinchingly 'that to the extent that investors have received payments in excess of the amounts they have invested, those payments are voidable as fraudulent transfers,'" quoting *Soulé v. Alliot (In re Tiger Petroleum Co.)*, 319 B.R. 225, 239 (Bankr. N.D. Okla. 2004).  *See also, Scholes v. Lehmann*, 56 F.3d at 757; *Sender v. Buchanan (In re Hedged-Investments Assoc., Inc.)*, 84 F.3d 1286, 1290 (10th Cir. 1996); *Wyle v. C.H. Rider & Family (In re United Energy Corp.)*, 944 F.2d 589, 595 n.6 (9th Cir. 1994); *Terry v. June*, 432 F. Supp. 2d 635, 642-43 (W.D. Va. 2006); and *Rieser v. Hayslip, et al. (In re Canyon Sys. Corp.)*, 343 B.R. 615, 643-45 (Bankr. S.D. Ohio 2006).

**Misplaced reliance on *Sharp* and *Churchill* decisions**

The defendants rely heavily on a decision of the Court of Appeals for the Second Circuit in *Sharp International Corp. v. State Street Bank and Trust Company (In re Sharp International Corp.)*, 403 F.3d 43 (2d Cir. 2005).  In that case debtor Sharp, a closely-held corporation, was looted by its

controlling shareholders.  Through its trustee in bankruptcy Sharp sued one of the company's former lenders, State Street Bank and Trust Company ("State Street"), for (i) aiding and abetting the insiders' breaches of fiduciary duty, and for receiving payment from Sharp that constituted (ii) a constructive fraudulent conveyance or (iii) an intentionally fraudulent conveyance.  The Bankruptcy Court's dismissal of these claims was affirmed by the District Court and by the Second Circuit.

State Street began to suspect fraud on the part of Sharp in the summer of 1998, conducted a private investigation and concluded in November 1998 that its suspicions were well founded.  As noted by the Second Circuit, "[t]he nub of the complaint is that State Street then arranged quietly for the Spitzes [controlling Sharp insiders] to repay the State Street loan from the proceeds of new loans from unsuspecting lenders. . . ."  403 F.3d at 47.  When State Street demanded repayment, Sharp arranged for a financing from certain investor-noteholders in the amount of $25 million, $10 million more than Sharp owed to State Street.  Sharp paid State Street approximately $12.25 million from the proceeds, and the Sharp insiders gave personal promissory notes for the remaining $2.75 million of the State Street debt.

The Court of Appeals rejected the aiding and abetting claim on the grounds that State Street had come by whatever knowledge it had of the fraud by the Sharp insiders "through diligent inquiries that any other lender could have made.   Sharp fails to identify any duty on State Street's part to participate in its own loss in order to protect lenders that were less diligent."  *Id.* at 52-53.  The constructive and actual fraudulent conveyance claims, asserted under the New York DCL, were also dismissed.  The constructive fraudulent conveyance claim failed because there was no basis to allege lack of "fair consideration" in Sharp's repayment to State Street of $12.25 million of the $15 million for which Sharp was indebted to State Street.  As such, the repayment constituted no more than a preference of one non-insider creditor over others which was not within ninety days of the bankruptcy filing and therefore was not recoverable under Section 547 of the Bankruptcy Code.

In rejecting the intentional fraudulent conveyance claim, the Court of Appeals began by noting that under DCL § 276 a creditor must show intent to defraud on the part of the transferor, and that where such intent is shown the conveyance will be set aside regardless of the adequacy of consideration.

After adverting to the New York case law under which actual intent to hinder, delay or defraud may be established circumstantially by reference to "badges of fraud," the Court said:

> Sharp argues that the district court inappropriately focused on "badges of fraud" even though the Spitzes' fraud was so clearly established that it need not be detected by indicia. However, the intentional fraudulent conveyance claims fails [sic] for the independent reason that Sharp inadequately alleges fraud with respect to the transaction that Sharp seeks to void, i.e., Sharp's $12.25 million payment to State Street. [citation omitted]
>
> The fraud alleged in the complaint relates to the manner in which Sharp obtained new funding from the Noteholders, not Sharp's subsequent payment of part of the proceeds to State Street. The $12.25 million payment was at most a preference between creditors and did not "hinder, delay, or defraud either present or future creditors." [citations omitted]

*Id.* at 56.

The reliance of several defendants on a passage quoted from this Court's decision in *Balaber-Strauss v. Sixty-Five Brokers (In re Churchill Mortgage Investment Corp.)*, 256 B.R. 664 is also inapposite. The decision in the *Churchill* case granted motions to dismiss in 65 adversary proceedings against individual brokers who were employed as independent contractors by the Churchill entities to identify and solicit investors in the various Churchill investment funds. The adversary proceedings sought to recover as constructive fraudulent conveyances the commissions paid to the brokers for success in finding investors. It was not alleged that any of the brokers had any knowledge of the fraud perpetrated by the Churchill entities. The passage relied upon by several defendants was part of this Court's discussion of legal authorities concerning constructive fraudulent conveyance claims, *not* claims based upon actual intent to hinder, delay or defraud. The passage in question reads:

> Suffice it to say that *Independent Clearing House* stands for the universally-accepted rule that investors may retain distributions from an entity engaged in a Ponzi scheme to the extent of their investments, while distributions exceeding their investments constitute fraudulent conveyances which may be recovered by the Trustee.

256 B.R. at 682. As shown by the discussion and citations above, this is a correct statement of the law with respect to constructive fraudulent conveyance claims.

In the *Churchill* case, the Trustee acknowledged that there was no basis to assert that the Churchill entities acted with intent to hinder, delay or defraud in paying the brokers the commissions which the brokers concededly earned. Rather, the Trustee argued that the brokers did not provide

equivalent "value" or "fair consideration" in exchange for their commission payments because the new investors which their efforts produced for the Churchill funds enabled the Churchill Ponzi scheme to continue and increased the ultimate universe of defrauded investors.  This theory was rejected by this Court, and by the District Court which affirmed, because the transaction at issue — the good faith rendition of services by the brokers and their compensation in the form of commissions at fair market rates — were not constructively fraudulent because the services rendered constituted fair value in exchange for the commissions.

   The Court of Appeals decision in *Sharp* and the Bankruptcy and District Court decisions in *Churchill* all stand for a central postulate in fraudulent conveyance analysis.   That is, the Court must focus precisely on the specific transaction or transfer sought to be avoided in order to determine whether that transaction falls within the statutory parameters of either an intentional or constructive fraudulent conveyance.  In *Churchill*, the specific transaction at issue was the payment of commissions to brokers who were lawfully hired for a lawful purpose to render lawful services at commission rates which were concededly fair compensation for the services actually rendered.   The fact that the Churchill entities were engaged in fraudulent activities which were collateral to the lawful and good faith work of and payments to the brokers was not germane under the language of the statutes (both the Bankruptcy Code and the DCL) which require the Court to focus on the specific transfers at issue.

   In the *Sharp* case, the specific transfer at issue was the repayment of a loan which Sharp owed to State Street.  The satisfaction of a legitimate antecedent debt constituted fair value, which foreclosed any constructive fraudulent conveyance claim.   The repayment of State Street doubtless re-sulted in the preference of State Street over other creditors, and as such the repayment would have been avoidable under Section 547 of the Bankruptcy Code if it had occurred within ninety days of Sharp's bankruptcy filing.  But there was nothing inherently fraudulent, deceitful, unlawful or otherwise wrongful in Sharp's fully-disclosed repayment of a valid antecedent debt.

   The contrast with the redemption payments at issue in these adversary proceedings is stark and crystalizes the fundamental difference between *Sharp* and the Section 548(a)(1)(A) claims here.  In contrast to the lawful and disclosed payment of a valid contractual antecedent debt in *Sharp*, the

redemption payments at issue here of non-existent investor account balances as misrepresented in fraudulent financial statements were themselves inherently fraudulent and constituted an integral and essential component of the fraudulent Ponzi scheme alleged in the amended complaints. The payments alleged here of fictitious account balances and profits were inherently deceitful and unlawful and were necessarily made with intent to "hinder, delay or defraud" present and future creditors. No such allegation was made in *Sharp*, which involved only a disclosed repayment of a valid antecedent debt actually owed to State Street.

The Court of Appeals in *Sharp* focused on the specific transaction there at issue — Sharp's repayment of its loan indebtedness to State Street — and concluded that there was nothing inherently fraudulent in that repayment. Noting that "[t]he fraud alleged in the complaint relates to the manner in which Sharp obtained new funding from the Noteholders, not Sharp's subsequent payment of part of the proceeds to State Street," the Court of Appeals refused to attribute to Sharp's lawful repayment to State Street an "actual intent to hinder, delay or defraud" based not on the lawful payment to State Street, but upon a separate and different transaction, Sharp's fraudulent obtaining of funds from the Noteholders.

Unlike the lawful repayment of loan indebtedness to State Street, the redemption payments in this case were themselves inherently fraudulent, and Bayou's only possible intent in making the redemption payments was to hinder, delay and defraud creditors.

**The good faith defense**

Little need be said of defendants' contentions that they received the redemption payments in good faith and without knowledge of any fraud, and that the amended complaints do not adequately plead want of good faith on their part. It is sufficient to point out that the defendants' good faith is an affirmative defense under Section 548(c) which must be pleaded in the first instance as a defense by the defendants. It is not incumbent on the plaintiffs to plead lack of good faith on defendants' part because lack of good faith is not an element of a plaintiff's claim under Section 548(a)(1). Moreover, the plaintiffs are entitled to conduct discovery on the issue of defendants' good faith and, if the plaintiffs

discover evidence which they believe may be sufficient to rebut the defense under Section 548(c), the issue generally would entail disputed issues of fact requiring a trial.

In any event, the plaintiffs' failure to adequately plead a lack of good faith on the part of the defendants is not a ground for dismissal under Rule 12(b)(6).

### Conclusion

Accepting as true the facts pleaded in the amended complaints and drawing all inferences which may be warranted by such facts, the plaintiffs in these adversary proceedings have pleaded valid, *prima facie* claims for avoidance of the redemption payments in their entirety under Section 548(a)(1)(A) based on actual intent to hinder, delay or defraud, and valid claims for avoidance of payments in redemption of purported fictitious profits as constructive fraudulent conveyances under Section 548(a)(1)(B). Plaintiffs may or may not be able to prove the requisite facts to establish the elements of their claims under Sections 548(a)(1)(A) and (B) or to rebut the defendants' assertions of good faith under Section 548(c) after discovery and a trial on the merits.  But the plaintiffs' claims have been adequately pleaded, and the motions to dismiss under Rule 9(b) and Rule 12(b)(6) must be denied.   Plaintiffs' counsel are directed to prepare an appropriate order and circulate it to all defense counsel for approval as to form before submission to this Court.


Dated:  White Plains, NY
         February 23, 2007


                                        /s/Adlai S. Hardin, Jr.
                                              U.S.B.J.

- 20 -

Schedule A

# UNITED STATES BANKRUPTCY COURT
# SOUTHERN DISTRICT OF NEW YORK

-------------------------------------------------------------- X

In re:                                              :        Chapter 11
                                                    :
BAYOU GROUP, LLC, et al.,                           :        Case No.: 06-22306 (ASH)
                                                    :
                        Debtors.                    :        Jointly Administered
-------------------------------------------------------------- X

| | |
|---|---|
| Bayou Accredited Fund, LLC v. Eric Garfinkel & Diane Garfinkel | Adv. Proc. No. 06-08294 (ASH) |
| Bayou No Leverage Fund, LLC v. Antonia M. Marsden Revocable Trust | Adv. Proc. No. 06-08317 (ASH) |
| Bayou Accredited Fund, LLC v. Redwood Growth Partners, L.P. | Adv. Proc. No. 06-08318 (ASH) |
| Bayou Accredited Fund, LLC v. Barrett Klein & Claire Klein | Adv. Proc. No. 06-08319 (ASH) |
| Bayou No Leverage Fund, LLC v. Christian Bros. H.S. Endowment | Adv. Proc. No. 06-08320 (ASH) |
| Bayou Superfund, LLC v. D. Canale Beverages, Inc. | Adv. Proc. No. 06-08321 (ASH) |
| Bayou Superfund, LLC v. Daedalus Financial Corporation | Adv. Proc. No. 06-08322 (ASH) |
| Bayou Superfund, LLC v. Dale A Sauser Trust | Adv. Proc. No. 06-08323 (ASH) |
| Bayou Superfund, LLC v. Doug Brown II | Adv. Proc. No. 06-08324 (ASH) |
| Bayou Superfund, LLC v. John J. Shea, Jr. | Adv. Proc. No. 06-08326 (ASH) |
| Bayou Superfund, LLC v. Elizabeth S. Gile-Ratcliff | Adv. Proc. No. 06-08327 (ASH) |
| Bayou No Leverage Fund, LLC v. Fred Montesi IRA and Fred Montesi | Adv. Proc. No. 06-08329 (ASH) |
| Bayou Superfund, LLC v. Gary Hegewald & Judith Hegewald | Adv. Proc. No. 06-08330 (ASH) |
| Bayou Superfund, LLC v. Graves Family Partnership | Adv. Proc. No. 06-08331 (ASH) |
| Bayou Superfund, LLC v. Helen Yulman Revocable Trust | Adv. Proc. No. 06-08332 (ASH) |
| Bayou Superfund, LLC v. Heritage Hedged Equity Fund LP | Adv. Proc. No. 06-08333 (ASH) |
| Bayou Superfund, LLC v. J. Robert Routt | Adv. Proc. No. 06-08334 (ASH) |
| Bayou No Leverage Fund, LLC v. Inherited IRA of John Sammond Marital Trust #1 and Diana Denholm Sammond | Adv. Proc. No. 06-08335 (ASH) |
| Bayou Superfund, LLC v. John D Canale III | Adv. Proc. No. 06-08336 (ASH) |
| Bayou Superfund, LLC v. KFI Capital Partners LLC | Adv. Proc. No. 06-08337 (ASH) |
| Bayou Superfund, LLC v. Mary P. Smythe Residuary Trust | Adv. Proc. No. 06-08338 (ASH) |
| Bayou Superfund, LLC v. Mary Jane Pidgeon Sledge | Adv. Proc. No. 06-08339 (ASH) |
| Bayou No Leverage Fund, LLC v. Mayer and Morris Kaplan Foundation | Adv. Proc. No. 06-08340 (ASH) |
| Bayou Superfund, LLC v. YK Investment Partnership II | Adv. Proc. No. 06-08341 (ASH) |
| Bayou No Leverage Fund, LLC v. Wesley E. Mudge Trust | Adv. Proc. No. 06-08345 (ASH) |
| Bayou Superfund, LLC v. Volunteer, LLC | Adv. Proc. No. 06-08346 (ASH) |
| Bayou Accredited Fund, LLC v. Thomas Swanson | Adv. Proc. No. 06-08347 (ASH) |
| Bayou Accredited Fund, LLC v. Samuel E. Christen | Adv. Proc. No. 06-08349 (ASH) |
| Bayou Superfund, LLC v. Wright Family Capital LP | Adv. Proc. No. 06-08350 (ASH) |
| Bayou Superfund, LLC v. Zoltan P. Horvath and Marilyn D. Horvath | Adv. Proc. No. 06-08351 (ASH) |
| Bayou Superfund, LLC v. Ronald Eastman and Marilyn Eastman | Adv. Proc. No. 06-08353 (ASH) |

| | |
|---|---|
| Bayou Superfund, LLC v. Warren L. Bauer and Lydia M. Bauer | Adv. Proc. No. 06-08354 (ASH) |
| Bayou Accredited Fund, LLC v. Walter Ratterman | Adv. Proc. No. 06-08355 (ASH) |
| Bayou Accredited Fund, LLC v. Wintsch Family Trust | Adv. Proc. No. 06-08356 (ASH) |
| Bayou Accredited Fund, LLC v. Ronald Weingart and Jenyne Weingart | Adv. Proc. No. 06-08357 (ASH) |
| Bayou No Leverage Fund, LLC v. Margaret J. Hartzler IRA and Margaret J. Hartzler | Adv. Proc. No. 06-08359 (ASH) |
| Bayou Accredited Fund, LLC v. Charles Weidmer Trust | Adv. Proc. No. 06-08360 (ASH) |
| Bayou Accredited Fund, LLC v. Meyer Investment Partners and C. Paul Meyer | Adv. Proc. No. 06-08361 (ASH) |
| Bayou Accredited Fund, LLC v. Morris Investment Company | Adv. Proc. No. 06-08362 (ASH) |
| Bayou Accredited Fund, LLC v. Neal and Jean Ross Family Trust | Adv. Proc. No. 06-08363 (ASH) |
| Bayou No Leverage Fund, LLC v. John C. Brunk, John C. Brunk IRA, and John C. Brunk Rollover IRA | Adv. Proc. No. 06-08366 (ASH) |
| Bayou Accredited Fund, LLC v. John H. Waldock Trust | Adv. Proc. No. 06-08367 (ASH) |
| Bayou Superfund, LLC v. Marvin E. Bruce Living Trust | Adv. Proc. No. 06-08368 (ASH) |
| Bayou Superfund, LLC v. Raleigh L Shaklee Trust | Adv. Proc. No. 06-08369 (ASH) |
| Bayou Superfund, LLC v. Richard A. Lewis and Roberta D. Lewis Trust | Adv. Proc. No. 06-08370 (ASH) |
| Bayou No Leverage Fund, LLC v. Singer 1995 Family Trust | Adv. Proc. No. 06-08371 (ASH) |
| Bayou Accredited Fund, LLC v. Freestone Low Volatility Partners LP | Adv. Proc. No. 06-08373 (ASH) |
| Bayou Superfund, LLC v. Dorothy H Bjurstom Trust | Adv. Proc. No. 06-08374 (ASH) |
| Bayou Superfund, LLC v. Shangri-La LLC | Adv. Proc. No. 06-08385 (ASH) |
| Bayou Superfund, LLC v. Insight Multi-Strategy Fund, LLC f/k/a LWM Aggressive Multi-Strategy Fund | Adv. Proc. No. 06-08386 (ASH) |
| Bayou Superfund, LLC v. Randall M. Rothstein and Sheryl B. Rothstein | Adv. Proc. No. 06-08389 (ASH) |
| Bayou Superfund, LLC v. Steve Rubin | Adv. Proc. No. 06-08391 (ASH) |
| Bayou Superfund, LLC v. George Crowley | Adv. Proc. No. 06-08392 (ASH) |
| Bayou Superfund, LLC v. Harris Kaplan | Adv. Proc. No. 06-08393 (ASH) |
| Bayou Superfund, LLC v. Michael Lebowitz and Marilyn Lebowitz | Adv. Proc. No. 06-08395 (ASH) |
| Bayou Superfund, LLC v. Gerald Friesen | Adv. Proc. No. 06-08396 (ASH) |
| Bayou Superfund, LLC v. Dalsy Family Limited Partnership | Adv. Proc. No. 06-08397 (ASH) |
| Bayou Superfund, LLC v. Chula Partners, L.P. | Adv. Proc. No. 06-08399 (ASH) |
| Bayou Superfund, LLC v. Canning Limited Partnership | Adv. Proc. No. 06-08400 (ASH) |
| Bayou Accredited Fund, LLC v. Steven R. Selcer | Adv. Proc. No. 06-08401 (ASH) |
| Bayou Superfund, LLC v. Terry A. Perl Revocable Trust | Adv. Proc. No. 06-08402 (ASH) |
| Bayou Accredited Fund, LLC v. Madison Capital Advisors Ltd. | Adv. Proc. No. 06-08403 (ASH) |
| Bayou Accredited Fund, LLC v. SGW Holdings LLC | Adv. Proc. No. 06-08404 (ASH) |
| Bayou Accredited Fund, LLC v. Prosperity, Inc. | Adv. Proc. No. 06-08405 (ASH) |
| Bayou Superfund, LLC v. Schilit Family Partnership | Adv. Proc. No. 06-08406 (ASH) |
| Bayou Accredited Fund, LLC v. Jewish Fed'n of Greater Washington | Adv. Proc. No. 06-08407 (ASH) |
| Bayou Superfund, LLC v. Meyer Mutual Fund, LLC | Adv. Proc. No. 06-08408 (ASH) |
| Bayou Superfund, LLC v. Bansal Foundation | Adv. Proc. No. 06-08409 (ASH) |
| Bayou Superfund, LLC v. Joseph Kampf and Barbara Kampf | Adv. Proc. No. 06-08410 (ASH) |

| | |
|---|---|
| Bayou Accredited Fund, LLC v. Ciconia & Co., LLC | Adv. Proc. No. 06-08411 (ASH) |
| Bayou Superfund, LLC v. Highgate Partners LP | Adv. Proc. No. 06-08412 (ASH) |
| Bayou Superfund, LLC v. Gary Brown Revocable Trust | Adv. Proc. No. 06-08414 (ASH) |
| Bayou Superfund, LLC v. Small Family Trust | Adv. Proc. No. 06-08416 (ASH) |
| Bayou No Leverage Fund, LLC v. David L. Lieb Foundation, Inc. | Adv. Proc. No. 06-08417 (ASH) |
| Bayou No Leverage Fund, LLC v. Pomerance Family Trust | Adv. Proc. No. 06-08418 (ASH) |
| Bayou Superfund, LLC v. Myrna Bennett | Adv. Proc. No. 06-08420 (ASH) |
| Bayou Superfund, LLC v. H&B Hedge Fund II LLC | Adv. Proc. No. 06-08422 (ASH) |
| Bayou No Leverage Fund, LLC v. Marc Fleisher IRA and Marc Fleisher | Adv. Proc. No. 06-08423 (ASH) |
| Bayou Superfund, LLC v. Karen Wolford and Douglas Wolford | Adv. Proc. No. 06-08429 (ASH) |
| Bayou No Leverage Fund, LLC v. Peter Haje IRA and Peter Haje | Adv. Proc. No. 06-08430 (ASH) |
| Bayou Superfund, LLC v. Kevin Bass | Adv. Proc. No. 06-08431 (ASH) |
| Bayou Superfund, LLC v. Eric Rothfeld and Harriet Rothfeld | Adv. Proc. No. 06-08433 (ASH) |
| Bayou Superfund, LLC v. Michael Davidson | Adv. Proc. No. 06-08435 (ASH) |
| Bayou Superfund, LLC v. Dor Family LLC | Adv. Proc. No. 06-08436 (ASH) |
| Bayou No Leverage Fund, LLC v. Revelle LaBarbera Trust | Adv. Proc. No. 06-08441 (ASH) |
| Bayou Accredited Fund, LLC v. DeoVolente, LP | Adv. Proc. No. 06-08442 (ASH) |
| Bayou No Leverage Fund, LLC v. Carl V. LaBarbera Trust | Adv. Proc. No. 06-08443 (ASH) |
| Bayou No Leverage Fund, LLC v. Revelle LaBarbera IRA | Adv. Proc. No. 06-08444 (ASH) |
| Bayou Superfund, LLC v. Tag Master Hedged Equity Fund, LLC | Adv. Proc. No. 06-08489 (ASH) |
| Bayou Superfund, LLC v. Trust Agreement for the Deferral Plan for Senior Executive Officers of Triarc Companies Inc. f/b/o Peter May | Adv. Proc. No. 06-08490 (ASH) |
| Bayou Superfund, LLC v. Trust Agreement for the Deferral Plan for Senior Executive Officers of Triarc Companies Inc. f/b/o Nelson Peltz | Adv. Proc. No. 06-08491 (ASH) |
| Bayou Superfund, LLC v. PCM Multi-Strategy Fund LP | Adv. Proc. No. 06-08492 (ASH) |
| Bayou Superfund, LLC v. Sterling Stamos Growth Fund L.P., Sterling Stamos Liquidity Fund, L.P., Sterling Stamos Security Fund- Friends and Family L.P., and Sterling Stamos Security Fund, L.P. | Adv. Proc. No. 06-08493 (ASH) |
| Bayou Superfund, LLC v. DB Structured Products, Inc. | Adv. Proc. No. 06-08494 (ASH) |

Schedule B

DECHERT LLP
By:  H. Jeffrey Schwartz, Esq.
     Gary J. Mennitt, Esq. (Argued)
     Elise Scherr Frejka, Esq.
     Jonathan D. Perry, Esq.
30 Rockefeller Plaza
New York, NY 10112
*Counsel for the Debtors and Debtors-in-Possession*

KLESTADT & WINTERS, LLP
By:  Tracy L. Klestadt, Esq. (Argued)
     Brendan M. Scott, Esq.
292 Madison Avenue, 17th Floor
New York, NY 10017
*Conflicts Counsel for the Debtors and Debtors-in-Possession*

KASOWITZ BENSON TORRES & FRIEDMAN LLP
By:  Joseph A. Gershman, Esq.
1633 Broadway
New York, NY 10019
*Bankruptcy Counsel for the Official Unsecured Creditors' Committee*

KIRKPATRICK & LOCKHART PRESTON GATES ELLIS, LLP
By:  Richard A. Kirby, Esq. (Argued)
     Philip M. Guess, Esq.
1735 New York Avenue NW, Suite 500
Washington, DC 20006-5221
*Litigation Counsel for the Official Unsecured Creditors' Committee*

KRAMER, LEVIN, NAFTALIS & FRANKEL, LLP
By:  Philip Bentley, Esq. (Argued)
     Jonathan T. Koevary, Esq.
     Peggy Farber, Esq.
1177 Avenue of the Americas
New York, NY 10036
*Counsel to Inherited IRA of John Sammond Marital Trust #1 and Diana Denholm Sammond; Eric Garfinkel and Diane Garfinkel; Antonia M. Marsden Revocable Trust; Daedalus Financial Corporation; Dale A. Sauser Trust; Doug Brown II; John J. Shea, Jr.; Elizabeth S. Gile-Ratcliff; Gary Hegewald & Judith Hegewald; Graves Family Partnership; J. Robert Routt; Wesley E. Mudge Trust; Volunteer, LLC; Thomas Swanson; Wright Family Capital LP; Zoltan P. Horvath and Marilyn D. Horvath; Ronald Eastman and Marilyn Eastman; Warren L. Bauer and Lydia M. Bauer; Walter Ratterman; Wintsch Family Trust; Ronald Weingart and Jenyne Weingart; Margaret J. Hartzler IRA and Margaret J. Hartzler; Charles Weidner Trust; Meyer Investment Partners and C. Paul Meyer; Morris Investment Company; Neal and Jean Ross Family Trust; John C. Brunk, John C. Brunk IRA, and John C. Brunk Rollover IRA; John H. Waldock Trust; Raleigh L. Shaklee Trust; Richard A. Lewis and Roberta D. Lewis Trust; Dorothy H. Bjurstom Trust; Shangri-La LLC; Insight Multi-Strategy Fund, LLC f/k/a LWM Aggressive Multi-Strategy Fund; George Crowley; Michael Lebowitz and Marilyn Lebowitz; Gerald Friesen; Canning Limited Partnership; Terry A. Perl Revocable Trust; SGW Holdings LLC; Schilit Family Partnership; Jewish Federation of Greater Washington; Meyer Mutual Fund, LLC; Bansal Foundation; Joseph Kampf and Barbara Kampf; Gary Brown Revocable Trust; Small Family Trust; Douglas Wolford and Karen Wolford; Dor Family LLC; Revelle LaBarbera Trust; Carl V. LaBarbera Trust; Revelle LaBarbera IRA and Revelle LaBarbera; DeoVolente, LP*

SONNENSCHEIN NATH & ROSENTHAL LLP
By:  Carole Neville, Esq. (Argued)
     Arthur H. Ruegger, Esq.
     John A. Bicks, Esq.
1221 Avenue of the Americas
New York, NY  10020
*Counsel to Redwood Growth Partners, L.P.; D. Canale Beverages, Inc.; Fred Montesi IRA and Fred Montesi; Heritage Hedged Equity Fund LP; John D. Canale III; KFI Capital Partners LLC; Mary P. Smythe Residuary Trust; Meyer and Morris Kaplan Foundation; YK Investment Partnership II; Marvin E. Bruce Living Trust; Randall M. Rothstein and Sheryl B. Rothstein; Steve Rubin; Harris Kaplan; Dalsy Family Limited Partnership; Chula Partners, L.P.; Steven R. Selcer; Madison Capital Advisors Ltd.; Prosperity, Inc.; Myrna Bennett; H&B Hedge Fund II LLC; Marc Fleisher IRA and Marc Fleisher; Kevin Bass; Helen Yulman Revocable Trust; Ciconia & Co., LLC; David L. Lieb Foundation, Inc.; Michael Davidson*

FRIED, FRANK, HARRIS, SHRIVER & JACOBSON LLP
By:  Bonnie Steingart, Esq. (Argued)
     Kalman Ochs, Esq.
One New York Plaza
New York, NY  10004-1980
*Counsel to Pomerance Family Trust; Peter Haje IRA and Peter Haje; Eric Rothfeld and Harriet Rothfeld; Tag Master Hedged Equity Fund, LLC; Trust Agreement for the Deferral Plan for Senior Executive Officers of Triarc Companies Inc. f/b/o Peter May; Trust Agreement for the Deferral Plan for Senior Executive Officers of Triarc Companies Inc. f/b/o Nelson Peltz; PCM Multi-Strategy Fund LP*

CAHILL, GORDON & REINDEL LLP
By:  Charles A. Gilman, Esq. (Argued)
     Kevin J. Burke, Esq.
80 Pine Street
New York, NY  10005-1702
*Counsel to DB Structured Products, Inc.*

LORD BISSELL BROOK LLP
By:  Jay G. Safer, Esq. (Argued)
     Joseph N. Froehlich, Esq.
885 Third Avenue, 26th Floor
New York, NY  10022
*Counsel to Singer 1995 Family Trust*

SEWARD & KISSEL LLP
By:  M. William Munno, Esq. (Argued)
One Battery Park Plaza
New York, NY  10004
*Counsel to Mary Jane Pidgeon Sledge*

SCHULTE ROTH & ZABEL LLP
By:  Michael L. Cook, Esq. (Argued)
     Sung-Hee Suh, Esq.
     James E. Breitenbucher, Esq.
919 Third Avenue
New York, NY  10022
*Counsel to Sterling Stamos Growth Fund L.P., Sterling Stamos Liquidity Fund, L.P., ;Sterling Stamos
Security Fund-Friends and Family L.P., Sterling Stamos Security Fund, L.P.*

LOEB & LOEB LLP
By:  P. Gregory Schwed, Esq. (Argued)
     Christian D. Carbone, Esq.
345 Park Avenue
New York, NY  10154
*Counsel to Highgate Partners L.P.*

ROSENBERG FELDMAN SMITH LLP
By:  Richard B. Feldman, Esq.
551 Fifth Avenue, 24th Floor
New York, NY  10176
*Counsel to Freestone Low Volatility Partners LP*

KATTEN MUCHIN ROSENMAN LLP
By:  Robert W. Gottlieb, Esq.
575 Madison Avenue
New York, NY  10022
*Counsel to WAM Long/Short Fund II, L.P. f/k/a WAM Long/Short Fund, L.P.*

JAECKLE FLEISCHMANN & MUGEL, LLP
By:  Joseph W. Allen, Esq. (Argued)
12 Fountain Plaza
Buffalo, NY  14202-2292
*Counsel to Christian Brothers High School Endowment*

RICHARD M. ALLEN, ESQ.
P.O. Box 108
45 Second Street
North Egremont, MA  01252
*Counsel to Dr. Samuel E. Christen*